# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

Shane D. Brooks,

      Plaintiff

v.

Roman, et al.,

      Defendants

Case No. 2:23-cv-01575-CDS-DJA

**Screening Order
For First Amended Complaint**

[ECF Nos. 4, 7, 8]

    Plaintiff Shane Brooks, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted duplicate first amended complaints (individually "FAC") under 42 U.S.C. § 1983 and an application to proceed *in forma pauperis*. ECF Nos. 4, 7, 8. The matter of the filing fee will be temporarily deferred. I now dismiss the duplicate FAC (ECF No. 8) without prejudice and screen the operative FAC (ECF No. 7) under 28 U.S.C. § 1915A.[1]

## I. Screening standard

    Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* §§ 1915A(b)(1), (2). Pro se pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

---

[1] While the FAC at ECF No. 8 is the same as the FAC at ECF No. 7, it is missing two pages. *Compare* ECF No. 7, *with* ECF No. 8.

In addition to the screening requirements under § 1915A, under the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *See id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a

plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by an incarcerated person may be dismissed *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.     Screening of FAC

In his FAC, Brooks sues multiple defendants for events that took place while he was incarcerated at Ely State Prison ("ESP"). ECF No. 7 at 1. Brooks sues Defendants Chet Rigney, Joshua Weiland, Warden William Gittere, Warden William Reubart, Warden David Drummond, Officer Serle, Officer Guzman, Officer C. Cooke, T. Cooke, and Lt. John Doe.[2] *Id.* at 1–3. Brooks brings three claims and seeks monetary relief. *Id.* at 4–32.

Brooks alleges the following facts. While incarcerated at ESP, Brooks had a medical incident that required him to be sent to a local hospital. *Id.* at 3. During his visit, Brooks spoke with the attending nurse and asked if a nurse who previously worked at ESP worked at the hospital. *Id.* at 4. She told him that the nurse did not work at the hospital and then left the room. *Id.* After she left, Rigney and Weiland, who were guarding Brooks, told him to stop "talk[ing] to the nurses." *Id.* The situation escalated when Rigney punched Brooks' face four times, causing his face to bleed. *Id.* at 5. During the incident Brooks was immobilized. *Id.* at 4. Weiland tried to hide the injuries by placing a spit-mask on Brooks. *Id.* at 5.[3]

Nurse Henry and Officer Heatherly asked Brooks what happened to his face when he returned to ESP. *Id.* It also appears that Brooks suffered at the hands of prison officers a few years before the latest attack when three prison officers beat him. *Id.* at 6. Brooks feared that he would

---

[2] Brooks does not list T. Cooke as a defendant in this case, but I construe the allegations against her as treating her as one. The Clerk of the Court shall add her to the docket sheet as a defendant.
[3] Brooks states in the FAC that he does not want to raise an excessive force claim based on the allegations of Rigney punching him in the face while in the hospital. ECF No. 7 at 9.

3

receive false notice of charges for this attack because it was an unofficial policy at ESP for the officers to file charges against the inmates they beat. *Id.* 6–8. Ultimately, the prison officials falsely charged Brooks and found him guilty.[4] *Id.* at 7. Fearing that more false charges from the hospital incident could stop his impending transfer out of ESP, Brooks told Weiland, Rigney, Serle, and Roberts that he would not report Rigney for beating him in the hospital if they did not write him up on false charges. *Id.* at 8. Rigney and Weiland agreed, but they were lying because they filed two false charges against Brooks. *Id.* To protect himself, Brooks reported the officers for the hospital beating. *Id.*

A few days after Brooks filed his report, Gittere, Drummond, Reubart, Tasheena Cooke, and Lt. Doe, along with several prison officers, ordered that he be moved to the infirmary while restrained in a wheelchair. *Id.* at 10. During the move to the infirmary, the prison officials ordered that Brooks be naked with only a suicide blanket covering his lower extremities. *Id.* at 10, 16. Officer Rigney and Officer C. Cooke walked Brooks into his cell, ripped the blanket off him, and closed the door after he entered. *Id.* at 11. Once inside, Rigney and C. Cooke—in the presence of Gittere, Drummond, Reubart, T. Cooke, and Lt. Doe—ripped Brooks' cuffed hands through the food flap on the door and attempted to break his arm. *Id.* at 11, 14. The cell camera captured this incident, and it showed that Gittere, Drummond, Reubart, T. Cooke, and Lt. Doe failed to intervene when Rigney and C. Cooke tried to break Brooks' arm. *Id.* at 11, 17. Brooks claims that he did not resist when Rigney and C. Cooke forced him into the cell. *Id.* at 14. The use of force in this incident was such that Brooks could not use his arm to accomplish everyday activities for three months. *Id.* at 19.

About a month after the officers attempted to break Brooks' arm, he was walking in the infirmary when his leg began to give out because he had surgery on his knee five months before this incident. *Id.* at 12, 27. Brooks asked the accompanying officers if he could stop for a second to rest his leg. *Id.* at 12. Without answering, Serle, Guzman, Weiland, and Rigney squeezed Brooks' arms and dragged him in an upright position. *Id.* After Brooks fell to the floor because he could no

---

[4] Brooks is not raising any due process claims concerning the false notice of charges in this case. *Id.* at 6.

4

longer stand, the officers hyper-extended his limbs and then placed their knees on his back. *Id.* at 12–13. The officers caused Brooks excruciating pain, and they appeared to be trying to break his ankles. *Id.* at 13. Brooks was immobilized and restrained during this incident and did not resist the officers. *Id.* at 13, 27.

During his time in prison, Rigney and Weiland frequently called Brooks a "rat" and a "snitch." *Id.* at 15, 17. When they said these things about Brooks, it appears they thought these labels would put Brooks in danger of violence from other inmates. *Id.* at 21. According to Brooks, Rigney, C. Cooke, Weiland, and Serle beat him because he had filed grievances against them for committing acts of violence against himself and other inmates. *Id.* at 29–31.

Based on these allegations, Brooks raises two Eighth Amendment excessive force claims[5] and a First Amendment retaliation claim. I also construe the allegations in the FAC as raising an Eighth Amendment failure to protect claim. I will address each claim in turn.

### A. Excessive Force Claim

When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). In determining whether the use of force was wanton and unnecessary, it may also be proper to consider factors such as the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7. Although an inmate need not have suffered serious injury to bring an excessive force claim against a prison official, the Eighth Amendment's prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force. *Id.* at 9–10.

---

[5] I construe the excessive force claims as a single claim.

Moreover, "a prison official can violate a prisoner's Eighth Amendment rights by failing to intervene" in another prison official's use of excessive force. *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (citations omitted). Where a prison official is liable for failing to intervene, "the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who performed the offending action." *Tobias v. Arteaga*, 996 F.3d 571, 584 (9th Cir. 2021) (quotation marks and citation omitted). Officials are only subject to this theory of liability, however, if they had a realistic opportunity to intervene. *Hughes v. Rodriguez*, 31 F.4th 1211, 1223 (9th Cir. 2022) (citing *Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000)).

I find that Brooks states a colorable excessive force claim on screening based on two incidents. First, Rigney and C. Cooke—in the presence of Gittere, Drummond, Reubart, T. Cooke, and Lt. Doe—ripped Brooks' cuffed hands through the food flap on the door of his cell in the infirmary and attempted to break his arm. Second, a month after the first incident, Serle, Guzman, Weiland, and Rigney tried to break Brooks' ankles when he fell to the floor because his knee gave out. At the screening stage, the officers' use of force in both incidents appears to be wanton and unnecessary because Brooks states he was not resisting and was restrained. In addition, during the first incident, Gittere, Drummond, Reubart, T. Cooke, and Lt. Doe did not intervene when Rigney and C. Cooke tried to break Brooks' arm, even though they were the officers' superiors and could have stopped the use of force. Thus, Brooks states a colorable excessive force claim on screening against Rigney, C. Cooke, Gittere, Drummond, Reubart, T. Cooke, Serle, Guzman, Weiland, and Lt. Doe, when Brooks learns his identity.[6]

### B. Retaliation Claim

`Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy

---

[6] Although the use of "Doe" to identify a defendant is not favored, flexibility is allowed in some cases where the identity of the parties will not be known prior to filing a complaint but can subsequently be determined through discovery. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). If the true identity of any of the Doe Defendant(s) comes to light during discovery, Brooks may move to substitute the true names of Doe Defendant(s) to assert claims against the Doe Defendant(s) at that time.

prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.*

`To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id.* at 567–68. Total chilling is not required; it is enough if an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities. *Id.* at 568–69. A plaintiff who fails to allege a chilling effect may still state a claim if he alleges that he suffered some other harm that is more than minimal. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

I find that Brooks states a colorable retaliation claim on screening. He alleges in the FAC that Defendants Rigney, C. Cooke, Weiland, and Serle beat him because he had filed grievances against them for committing acts of violence against himself and other inmates. I find that beating an inmate for filing grievances could arguably chill an inmate of ordinary firmness from future First Amendment activities and does not appear to have a legitimate correctional goal. *See Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) (holding that a threat of retaliation is sufficient to constitute an adverse action if the threat is made in retaliation for an inmate's use of the prison grievance procedures). Therefore, Brooks states a colorable retaliation claim on screening against Defendants Rigney, C. Cooke, Weiland, and Serle.

### C. Failure to Protect Claim

Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety. *Id.* at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must

7

both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id.* at 837. Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed. *Id.* at 843.

I find that Brooks states a colorable failure to protect claim on screening. Liberally construing the allegations in the FAC, while Brooks did not suffer violence at the hands of other inmates, Rigney and Weiland frequently labeled him a "snitch" and a "rat." It appears that they knew these labels could put Brooks in danger. On screening these allegations are sufficient to state a colorable failure to protect claim against defendants Rigney and Weiland. *See Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (holding that a plaintiff-inmate stated a cause of action when he alleged that prison officials labeled him a "snitch" with the intent of having him killed by other inmates).

### III. Conclusion

I therefore order that a decision on the application to proceed *in forma pauperis* (ECF No. 4) is deferred.

I further order that the FAC (ECF No. 7) is the operative complaint. The Clerk of the Court shall send Brooks a courtesy copy.

I further order that the duplicate FAC **[ECF No. 8] is dismissed without prejudice**.

I further order that the Clerk of the Court add T. Cooke to the docket sheet as a defendant in this action.

I further order that Brooks' Eighth Amendment excessive force claim will proceed against Defendants Rigney, C. Cooke, Gittere, Drummond, Reubart, T. Cooke, Serle, Guzman, Weiland, and Lt. Doe, when Brooks learns his identity.

I further order that Brooks' First Amendment retaliation claim will proceed against Defendants Rigney, C. Cooke, Weiland, and Serle.

I further order that Brooks' Eighth Amendment failure to protect claim will proceed against Defendants Rigney and Weiland.

I further order that given the nature of the claim(s) that I have permitted to proceed, this action is stayed for 90 days to allow Brooks and defendant(s) an opportunity to settle their dispute before the court determines whether to grant Brooks' *in forma pauperis* application, the $350.00 filing fee is paid, an answer is filed, or the discovery process begins. During this 90-day stay period and until the court lifts the stay, no other pleadings or papers may be filed in this case, and the parties will not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the court to do so. I will refer this case to the court's Inmate Early Mediation Program, and the court will enter a subsequent order. Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General will file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay.  If the parties proceed with this action, the court will then issue an order setting a date for defendants to file an answer or other response.  Following the filing of an answer, the court will issue a scheduling order setting discovery and dispositive motion deadlines.

I remind the parties that "settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve Brooks' issues differently. A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

I further order that if the case does not settle, then the court will determine whether to grant Brooks' *in forma pauperis* application. Brooks will be required to pay the full $350.00 statutory filing fee for a civil action regardless of whether the court grants his *in forma pauperis* application. This fee cannot be waived, and the fee cannot be refunded once the court enters an order granting Brooks' application to proceed *in forma pauperis*. If Brooks is allowed to proceed *in forma pauperis*, the fee will be paid in installments from his prison trust account. *See* 28 U.S.C. § 1915(b). If Brooks is not allowed to proceed *in forma pauperis*, the full $350 statutory filing fee for a civil action plus the $52 administrative filing fee, for a total of $402, will be due immediately.

I further order that if any party seeks to have this case excluded from the inmate mediation program, that party will file a "motion to exclude case from mediation" no later than 21 days prior to the date set for mediation. The responding party will have 7 days to file a response. No reply will be filed. Thereafter, the court will issue an order, set the matter for hearing, or both.

I further order that if Brooks needs an interpreter to participate in the mediation program, he will file a notice identifying the interpretation language and the need for the interpreter within 30 days from the date of this order.

I further order that the Clerk of Court is further directed to add the Nevada Department of Corrections to the docket as an Interested Party and electronically provide a copy of this order and copies of all items previously filed in this case by regenerating the Notices of Electronic Filing on the Office of the Attorney General of the State of Nevada by adding the Attorney General of the State of Nevada to the interested party on the docket. This does not indicate acceptance of service.

I further order that the Attorney General's Office must advise the Court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of Interested Party for the purpose of participation in the Early Mediation Program. No defenses or objections, including lack of service, will be waived because of the filing of the limited notice of appearance.

Dated: November 6, 2024

_____
Cristina D. Silva
United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Shane D. Brooks,

                Plaintiff

v.

Roman, et al.,

                Defendants

Case No. 2:23-cv-01575-CDS-DJA

REPORT OF ATTORNEY GENERAL RE: RESULTS OF 90-DAY STAY

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL WILL FILE THIS FORM. THE INMATE PLAINTIFF WILL NOT FILE THIS FORM.**

        On _____ [*the date of the issuance of the screening order*], the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The Court ordered the Office of the Attorney General of the State of Nevada to file a report ninety (90) days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies.

REPORT FORM

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

<u>Situation One: Mediated Case</u>: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

    \_\_\_\_    A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

    \_\_\_\_    A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

    \_\_\_\_    No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

      \_\_\_    No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

      \_\_\_    No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

      \_\_\_    None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

      \_\_\_    The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

      \_\_\_    The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

      \_\_\_    The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

      \_\_\_    None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this \_\_\_\_\_ day of _____, \_\_\_\_ by:

Attorney Name: _____
                              Print                                          Signature

Address: _____

Phone: _____

Email: _____